RAILWAY CO. *v.* YARBOROUGH.

Opinion delivered November 19, 1892.

1. *Limitation of action—Damage by overflow.*

Where, at the time a railway embankment is erected, it is uncertain whether it will cause adjoining land to overflow or not, and growing crops are subsequently overflowed by reason of such embankment, the statute of limitations begins to run, not from the time the embankment was erected, but from the time the injury occurred.

2. *Non-expert opinion—Cause of overflow.*

The opinion of a non-expert witness that an overflow was caused by a railway embankment is inadmissible where it does not appear that the facts upon which his opinion was based could not have been sufficiently described to the jury.

3. *Measure of damages—Destruction of growing crop.*

   The damages recoverable for the destruction of a growing crop by overflow are limited to the actual value of the crop at the time of its destruction, with legal interest from date of injury; such value is to be ascertained from consideration of the circumstances existing at the time of its destruction, as well as at any time before the trial, favoring or rendering doubtful the conclusion that it would attain to a more valuable condition, and from consideration of the hazards and expenses incident to the process of supposed growth or appreciation.

   Accordingly, where the evidence shows that the growing crop was destroyed by back-water from a railway embankment, but that a few days afterwards there was a general overflow which would have destroyed the crop had the embankment not been erected, a verdict for damages which was based upon the assumption that the crop would have matured will be set aside.

Appeal from Nevada Circuit Court.

CHARLES E. MITCHEL, Judge.

This was an action by W. E. Yarborough against the St. Louis, Iron Mountain & Southern Railway Company, to recover damages for the destruction of the plaintiff's growing crops during an overflow of the Red River. The crops were destroyed on the 9th day of May, 1888, and the action was commenced on the 20th day of November, 1889. The complaint alleges that the defendant's road-bed was constructed across the Red River bottom in 1873; and that it was so carelessly constructed and maintained that, by reason of the insufficiency of its openings and trestles to permit the escape of the water during an overflow, the water was dammed up by it and caused to flow back upon the plaintiff's lands. The first paragraph of the answer admitted that the road-bed was constructed in 1873, but denied the charge of negligence and the other material allegations of the complaint. The second paragraph pleaded the statue of limitations, alleging that the plaintiff's right of action did not accrue within three years next before the commencement of the action.

On the trial much evidence was given to the jury as to the topography of the country in the vicinity of the plaintiff's farm and as to the manner in which the flowage passed on to the low lands adjacent to the river—also as to the character of some of the overflows occurring before and since the building of the road. The plaintiff, testifying in his own behalf, stated that the crops destroyed consisted of twenty-five acres of corn and sixty-five acres of cotton, and that, at the time of their destruction, the corn was about "knee high," and the cotton large enough to have received one working; that the average yield of his land in corn would have been, in 1888, forty-five bushels per acre, and that corn was worth, at the time the crop would have matured, fifty cents per bushel; that the average yield of his land in cotton would have been for that year nearly a bale per acre; that on the sixty-five acres in cotton he would have made sixty bales; and that the average price he obtained for cotton produced the same season was nine cents per pound. This testimony of the plaintiff was admitted over the objection of the defendant.

Royston Nash, a witness for the plaintiff, testified that he lived on Red River fifty years and had seen a few overflows there. There had been overflows in 1866, 1867, 1876 and 1880. Since the railroad had been built in 1873 witness noticed a difference. The overflow had been more frequent and was higher. This question was asked witness : "What is the occasion of that?" The question was objected to, but the objection was overruled. Witness answered : "I think it is the embankment or dump." To this answer the defendant objected, but the objection was overruled.

The court gave the jury the following instruction, which was objected to by the defendant :

"If the jury find for the plaintiff, the measure of damage will be the actual cash value of the crops

destroyed, if the jury find from a preponderance of the evidence any such destruction, at the time of their destruction, with interest thereon at the rate of six per cent. per annum from the date of said destruction.''

The court refused to give the following instruction, requested by the defendant :

"10.   The jury are instructed that if they find from the evidence that the defendant did erect its railway embankment south of Red River, upon its own grounds, and not upon ground belonging to the plaintiff, and that for want of sufficient openings, trestles, culverts and bridges in said embankment, plaintiff was injured ; and if they find that the construction of said railway was permanent in its character, and that its erection and continuance was necessarily an injury to the plaintiff and others, and that it was permanent in its effects, and that such permanent structures wrongfully obstructed the flow of water from above them ; and if you find that said embankments were constructed in 1873, and their continuance ever since was necessarily an injury to the plaintiff, and by reason thereof plaintiff was injured, he cannot recover in this action, because said embankment was constructed more than three years·before the commencement of this suit, and the plaintiff is barred by the statute of limitations.''

The jury returned a verdict for the plaintiff, and assessed his damages at $1092.50.   The defendant moved for a new trial on various grounds, embracing the ruling mentioned as to the admission of testimony and as to instructions to the jury.   The motion was refused, and the railway company has appealed.

The other facts necessary to an understanding of the questions decided are stated in the opinion.

*Dodge & Johnson* for appellant.

1.   The verdict was contrary to the evidence.

2.   The opinions of witnesses who were not experts,

and who had no personal knowledge upon which to base an opinion, were incompetent, and the court erred in allowing such evidence to go to the jury. 17 S. W. Rep. 364; Laws. Exp. Ev. pp. 203, 496.

3. The court erred in admitting testimony as to what should be the criteria of the measure of damages. The actual cash or market value of the crops at the time they were destroyed is the only true and correct measure of damages, and not what the yield and price would have been had the crop matured. 10 S. W. Rep. 576; 85 Ill. 594; 47 Ga. 260; 41 Wis. 602; 11 S. W. Rep. 123, 337; 16 Ill. 530; *ib.* 534; 66 Barb. 88; 29 N. Y. 37; 33 Conn. 514; 17 Ill. App. 631; Thomps. Neg. sec. 1262.

*Scott & Jones* for appellee.

1. The evidence of Royston Nash was admissible as expert evidence. 14 S. W. Rep. 611.

2. The measure of damages was their actual cash value at the time of their destruction (10 S. W. Rep. 576), and to establish that value, its probable yield and the value of such yield may be taken into consideration. The difference between the value of the probable crop and the expense of making and marketing it will in most cases give the value. 11 S. W. Rep. 526.

3. The claim was not barred. 52 Ark. 240.

1. Limitation to action for damage by overflow.

MANSFIELD, J. 1. The damage which the plaintiff sued to recover was not original in the sense that it necessarily resulted from the erection of the railway embankment. But after that structure was completed the injury complained of was still entirely uncertain and contingent and such as might never happen. In this respect the case is similar to that of the *St. Louis, etc. R. Co.* v. *Biggs*, 52 Ark. 240; and, according to the rule there laid down, the statute of limitations did not begin to run until the crops were destroyed. *Troy* v. *Cheshire R. Co.* 23 N. H. 83. The defendant's tenth instruction was not,

therefore, applicable to the facts, and the court was right in refusing to give it.

2. The opinion of Royston Nash, admitted in evidence against the objection of the defendant, does not appear to us to fall within any of the exceptions to the general rule requiring witnesses to state facts and excluding their mere opinions. It is not claimed that Nash possessed any scientific knowledge on the subject as to which his opinion was given, and he did not testify as an expert. As a non-expert, in order to make his opinion competent, it was essential not only that it should relate to a matter with which he was specially acquainted, but the subject matter must have been such as could not be otherwise sufficiently described. For if it was practicable for him to detail to the jury the facts within his knowledge as fully and perfectly as he had observed them, then the jury should have been left free to draw their own conclusion, and his opinion was inadmissible. 1 Whart. Ev. sec. 512; 1 Greenleaf, Ev. sec. 440, note *a*, p. 535; *Bennett* v. *Meehan*, 83 Ind. 566; *Commonwealth* v. *Sturtivant*, 117 Mass. 122; *Fort* v. *State*, 52 Ark. 180; 1 Bishop, Cr. Pro. sec. 1178; *Brown* v. *State*, 55 Ark. 599; *Railway Co.* v. *Bruce*, 55 Ark. 70; *Railroad Co.* v. *Schultz*, 43 Ohio St. 270, and cases cited; *Fraser* v. *Tupper*, 29 Vt. 409; *Crane* v. *Northfield*, 33 Vt. 124. The case of the *Gulf, Colorado & Santa Fe Railway* v. *Locker*, 14 S. W. Rep. 611, cited to support the admission of the opinion in question, follows a ruling of the same court in *International, etc., R. Co.* v. *Klaus*, 64 Texas, 294; and the decision in the latter case appears to rest mainly on the authority of *Porter* v. *Mfg. Co.* 17 Conn. 249. In the Connecticut case it was held that the opinion of a non-expert as to the sufficiency of a dam to withstand the pressure of the waters of a certain stream was properly received, in connection with the facts on which it was based. The court did not, however, uphold

*2. Admissibility of opinion of non-expert.*

the competency of the opinion on the ground merely that the witness had enjoyed special opportunities for observing the dam and the stream across which it was erected; but it was announced, as an additional reason for the decision, that the facts on which the witness' opinion was founded could not be definitely stated to the jury. And we find nothing in the opinions of the Supreme Court of Texas in the cases referred to, which indicates that the facts in those cases were not also regarded as of such nature that they could not be reproduced before the jury precisely as they appeared to the witness.

Nash had resided on Red River for many years, and his observation of its overflows was probably such as to make any opinion thus formed admissible if the facts observed could not themselves be perfectly described. But we do not see from the record that such description was impracticable. Having stated that since the building of the railroad the overflows have been more frequent and higher than they were previous to the road's construction, he was asked to state the cause of this difference, and answered that it was caused, in his judgment, by the embankment on which the track of the road is laid. This was the opinion objected to; and, as it appears in the record, it would seem to be founded alone on the increased frequency and depth of the overflow. It is clear that these two facts could have been placed before the jury without the least difficulty. It was only necessary to mention them. The witness, however, in the course of his further testimony, stated some additional facts, which, it is fair to presume, were not without influence in forming his opinion. The more important of the facts thus subsequently stated were that before the road was built the plaintiff's lands were overflowed from the front, or towards the river, and that now they are first covered with waters coming from the rear in the direction of the railroad; that since the construction of

the road the current of the water above is not so swift
as formerly; and that, during the overflow which de-
stroyed the crops, the water was four or five feet higher
on the north side of the road•than it was on the south
side. These additional facts could also be detailed in
such manner as to enable the jury to understand their
force and bearing as fully as the witness did; and they
did not cure the previous error of admitting his opinion.
*Railroad Co.* v. *Schultz*, 43 Ohio St. 270; *Fraser* v. *Tup-
per*, 29 Vt. 409.

3. The court's charge properly limited the damages
recoverable by the plaintiff to the actual value of the
crops destroyed, with interest thereon from the date of
the injury at the rate of six per cent. per annum. *Byrne*
v. *Railway Co.* 38 Minn. 213; *Folsom* v. *Log Driving
Co.* 41 Wis. 602; *Lommeland* v. *Ry. Co.* 35 Minn. 412;
*Sabine R. Co.* v. *Smith*, 73 Texas, 1. But, under the
circumstances of the case, a wrong standard of value
was given to the jury by permitting the plaintiff to prove
the average yield of his lands and the market value of
similar crops sold after their maturity the year his crops
were planted. 3 Sedg. Dam. sec. 937. The extent of
his loss is to be measured by the value of the crops in the
condition they were in at the time of their destruction.
*Richardson* v. *Northrup*, 66 Barb. 85. And the method
proper to be observed in ascertaining their value at that
time cannot be better stated than by quoting the lan-
guage used by Mr. Sutherland in treating of the meas-
ure of damages applicable to the class of cases to which
this belongs: "The jury," he says, "may estimate,
with the aid of testimony, the value of the crop at the
time of its destruction, in view of all the circumstances
existing at that time, as well as at any time before the
trial, favoring or rendering doubtful the conclusion that
it would attain to a more valuable condition, and all the
hazards and expenses incident to the process of supposed

*(margin note: 3. Damages for destruction of crop.)*

growth or appreciation." 1 Suth. Dam. 193. The principle of the text quoted is exemplified by the case of *Parsons* v. *Pettingell*, 11 Allen, 507. That was an action to recover damages for the destruction of the plaintiff's house and furniture, destroyed for the purpose of staying a conflagration ; and it was held that, in estimating the damages sustained, the jury should consider the situation of the property and the chance of its being saved, although it was not on fire, and should determine its value with reference to the peril to which it was exposed. And so in this case we think a just valuation of the plaintiff's crops cannot be made without considering their condition and the circumstances in which they were placed. They consisted of corn and cotton at such stage in their growth that the cotton could have had only a prospective value, and the corn no other value unless it could have been used as fodder. The water which destroyed them was, as the plaintiff testified, backed on to his lands from the rear and passed over them into the river. But the evidence shows that the overflow became general, and that, a few days after the loss of the crops, the river was out of its banks in front of the plaintiff's farm and covered it with water flowing directly to it. It thus appears that the destruction of the crops by the general overflow was impending, if not inevitable, at the time the water backed upon them. And yet it is evident, from the damages assessed, that the jury have valued the crops as if they might have matured but for the wrong ascribed to the railway. We think the proof did not warrant an assessment so large, and that the court erred in refusing to set aside the verdict.

The judgment will be reversed, and the cause remanded for a new trial.