St. Louis Southwestern Railway Company v. Ellis.

Opinion delivered October 19, 1925.

1. RAILROADS—NOTICE TO CONSTRUCT CATTLE GUARDS—JURY QUESTION—Evidence *held* to raise question for the jury whether notice to a railroad to construct cattle guards, as required by Crawford & Moses' Dig., §§ 8478-9, had been given.

2. APPEAL AND ERROR—QUESTION NOT RAISED BELOW.—Objection that plaintiffs as share-croppers were not entitled to sue for damages to their crop cannot be raised on appeal where it was not raised in the court below.

3. DAMAGES—DESTRUCTION OF CROP—INSTRUCTION.—A requested instruction that the measure of damages for destruction of a crop is the actual value of the crop destroyed with interest, such value to be estimated in view of all the circumstances existing at the time, as well as any time before trial, favoring or rendering

doubtful the conclusion that it would attain a more valuable condition, and all the hazard and expense incident to the process of the supposed growth or appreciation, *held* correct.

4.  DAMAGES—DESTRUCTION OF CROP—INSTRUCTION.—In an action for destruction of a crop it was error to instruct the jury that the measure of damages is the difference between the value of the crop before and after the injury.

5.  TRIAL—INSTRUCTION—SPECIFIC OBJECTION.—A request for a correct instruction is tantamount to a specific objection to an erroneous instruction given by the court.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; reversed.

*J. R. Turney, A. H. Kiskaddon, W. T. Wooldridge* and *Chas. Jacobson,* for appellant.

*Sam T. Poe, Tom Poe,* and *Louis Tarlowski,* for appellee.

WOOD, J.   J. H. Lewis, in the year 1922, rented 132 acres of land on what is known as the Martin place, belonging to the Urquhart estate. He turned over twenty acres to Calvin Johnson, twenty-five acres to Charlie Scott, twenty acres to Jim Ellis, and twenty acres to Nathan Lewis.   J. H. Lewis was to furnish these parties the land and the mules, and they were to raise the crop and give him one-half of what they made and they were to take the other half.   The Martin place was situated within Fencing District No. 8 of Pulaski County which was formed in 1921.   The district begins at the Arkansas River and runs north to the Iron Mountain fence, which served as its north and west boundary.   The eastern city limits of North Little Rock was the eastern boundary.   The Southwestern Railway Company, known as the Cotton Belt, went through the fencing district and through the Martin place.   Prior to the creation of the fencing district the railroad company had erected cattle-guards to protect the lands where it entered the Martin place from stock invasion.   About the latter part of July, 1922, the cattle-guards were removed because they were in a defective condition and endangered the operation of trains.   When the fencing district was created, the eastern limits of North Little

Rock was to be taken care of by a city ordinance prohibiting stock from running at large, but the city council failed to take care of that end of the district. The district's fence was not completed around the western boundary because the county judge would not permit the erection of gates across the road. Immediately after the cattle-guards were removed the cattle began destroying crops of Ellis, Scott, Johnson and Nathan Lewis. J. H. Lewis, who had farmed the lands to these parties, complained to W. H. Miller, the agent of the Urquhart estate, from whom he had obtained his lease, and Miller notified the Cotton Belt people within a few days thereafter. Miller carried on quite a bit of correspondence with the Cotton Belt people, and they finally replaced the cattle-guards, in the spring of the following year, 1923. Miller wrote Wooldridge, the attorney of the railway company, and also its superintendent at Pine Bluff. Miller did not recall the date that he first wrote, but his recollection was that he notified the railway company soon after J. H. Lewis reported the matter to him.

Separate actions were instituted by Ellis, Scott, Johnson, and Nathan Lewis against the St. Louis Southwestern Railway Company. The complaints alleged in substance that the tracks of the defendant passed through the lands they farmed in 1922, around which they had a cattleproof fence, and that in July, 1922, after the crops were practically matured, the defendant in violation of the statute removed the stock-guards and did not install them again during the crop season; that by such act they had been seriously damaged. Each set forth a bill of particulars specifying the damage to their respective crops. The defendant answered denying specifically the material allegations of the complaints and set up in defense that the stock-guards were within the territory created by the fencing district; that, after the fencing district had constructed the fence, the cattle were prohibited from running at large within the district, and there was no longer any reason for maintaining the stock-guards in the district. The cases were consolidated for trial. The

trial resulted in verdicts and judgments in favor of the respective plaintiffs, from which is this appeal.

1.   The appellant contends that the court erred in refusing to give a peremptory instruction to the jury to return a verdict in its favor because the complaints did not allege, nor was there any proof to show, that a written notice was given to the appellant, as required by §§ 8478 and 8479 of C. & M. Digest.   These sections of the statute provide in substance that it shall be the duty of railroad companies to construct and maintain suitable and safe stock-guards upon receiving ten days' notice in writing from the owner or agent of lands through which the railroad passes, or by any person aggrieved, or his agent, the notice to be served upon the station agent or upon any person upon whom service may be had in the employ of the railroad company, or any officer thereof, and that proof that such written notice was delivered as required shall be sufficient.   For a failure to comply with the requirements of the statute, the railroad companies are made liable to the person or persons aggrieved for actual damages and a penalty to be covered by civil action.

Conceding without deciding that the notice required by the above statute was a condition precedent to the recovery by the appellees, we are convinced that under the testimony it was an issue for the jury to determine whether the above statute had been complied with.   While the complaints do not allege that notice was given by the appellees as required by statute, testimony was directed to that issue, as shown by the testimony of Miller already set forth above.   In addition to the testimony of Miller the appellant adduced a letter of Miller to the superintendent of the railway company at Pine Bluff dated December 11, 1922, and the testimony for the appellant was to the effect that this was the only notice that the company had received from Miller.   But the testimony of Miller as above stated, was to the effect that his recollection was that he notified the Cotton Belt people soon after J. H. Lewis first came to him with the report

that the cattle-guards had been removed. He further states that the letters written to the attorney and superintendent of the railway company referred to in the evidence were not the only correspondence; that his recollection was that he "did receive some reply, and then the thing dragged on, and they never put the cattleguards down until the next year."

The court instructed the jury on this issue in effect that notice to the superintendent of the railway company was sufficient, and, if they found that written notice was served on the superintendent of the railway company, they should find for the appellees, if they were damaged after such notice. The issue as to whether notice as required by the statute was given the appellant was thus submitted to the jury under a correct instruction, and the testimony of Miller tended to prove that such notice by letter was given to, and received by, the appellant. The testimony was therefore sufficient to sustain the verdict on that issue.

2. The appellant contends that the undisputed testimony shows that the appellees were share-croppers, and as such they did not have such interest in the crops injured as to enable them to maintain this action. But here again we find it unnecessary to decide whether the appellees, under the testimony, were technically sharecroppers, for appellant did not raise that issue in the court below, and he is therefore not in an attitude to raise it here for the first time. After the testimony was all adduced, the appellant did not move the court to dismiss the action of the appellees on the ground that they were not proper parties to maintain the action, nor did it ask an instruction submitting the issue to the jury as to whether the appellees were share-croppers, and, if so, declaring that they were not entitled to maintain the action. On the contrary, the appellant, by its prayer for instruction No. 3, asked the court to instruct the jury that "these suits are by share-croppers alone, and if you find from the evidence that their crops were injured and you fix the amount of the injury according to the measure

of damages given in these instructions, you will find for each plaintiff in a sum equal to one-half of said amount, that being their interest in said crop.'' Assuming this attitude at the trial after all the testimony was adduced, the appellant must be held to have waived any objection it had to the legal capacity of the appellees to bring and maintain their actions. After stating before the trial court that the appellees had the capacity to sue as appellant did by its prayer for instruction No. 3, appellant will not be allowed to assume an inconsistent attitude here and to obtain a reversal of the judgment on a ground not brought to the attention of the trial court.

3. The appellant, in its prayer for instruction No. 4, asked the court to instruct the jury as follows: "If you find for the plaintiff in this case, you will assess his damages at the actual value of the crops destroyed, with interest thereon from the date of the injury at the rate of six per cent. per annum. In arriving at this amount you may estimate from all the testimony in the case the value of the crops at the time of destruction in view of all the circumstances existing at the time as well as any time before the trial, favoring or rendering doubtful the conclusion that it would attain to a more valuable condition, and all the hazard and expense incident to the process of the supposed growth or appreciation." Appellant's prayer for instruction No. 5 was of similar purport. The court refused these prayers, but gave to the jury the following instruction: "If you find for the plaintiff, you can only find for plaintiff in such damages as he sustained after the written notice was served on the superintendent, if you find that such notice was served; that is, if you find damages were sustained after such notice. Now, gentlemen, if you find for the plaintiffs, the amount you should find for each plaintiff would be the difference in the value of his crop before and after the injury, if you find from the testimony there was an injury. So, in arriving at the amount of the damage each of the plaintiffs have sustained, you will take into consideration the value of the crop before the damage,

if you find there was damage, and the value of the crop after the damage—that is, the difference between the value of the crop before and after, the fair cash market value in each case that you find to be the difference.''

The case of *Railway Company* v. *Yarborough,* 56 Ark. 581, was an action for the destruction of growing crops. We there said at page 619: "The court's charge properly limited the damages recoverable by the plaintiff to the actual value of the crops destroyed, with interest thereon from the date of the injury at the rate of six per cent. per annum. * * * And the method proper to be observed in ascertaining their value at that time cannot be better stated than by quoting the language used by Mr. Sutherland in treating of the measure of damages applicable to the class of cases to which this belongs: 'The jury,' he says, 'may estimate with the aid of testimony, the value of the crop at the time of its destruction, in view of all the circumstances existing at that time, as well as at any time before the trial, favoring or rendering doubtful the conclusion that it would attain to a more valuable condition, and all the hazards and expenses incident to the process of supposed growth or appreciation.' ''

*Railway Company* v. *Lyman,* 57 Ark. 512, was likewise an action for the destruction of growing crops. In that case, over the general objection of the railway company, the court gave the following instruction: "If the jury find for the plaintiff, the measure of damages will be the actual cash value of the crops destroyed at the time of the destruction, if the jury find any such to have been proven at the time of the destruction, with interest thereon at the rate of six per cent. per annum from the date of such destruction." Passing on the objection to the instruction, we said that the rule of damages which that instruction states was approved in *Railway Company* v. *Yarborough,* 56 Ark. 612.

In *St. Louis, I. M. & S. Ry. Co.* v. *Hoshall,* 82 Ark. 387, a general objection was made to an instruction which reads as follows: "If you find the defendant

liable, the measure of damages to the crops is the value of the difference between what was produced and what would have been produced had the water not caused the injury, less the difference between the cost of producing and .gathering what was produced and the cost of producing and gathering an average crop, as you may find from the testimony.'' In passing upon the objection to the instruction, after quoting and approving the language as set forth above from the opinion in *Railway Co.* v. *Yarborough, supra,* we said, at page 391: ''The first paragraph of the instruction above does not follow this rule, but it was not so far variant as to be prejudicial error, in the absence of a specific objection or a request for an instruction to meet the views of counsel, and in the form approved by this court. * * * While the paragraph under review did not lay down the correct rule for the measure of the damage, it did contain proper elements for the consideration of the jury, in connection with other facts, in determining what the value of the crop was at the time of its destruction. Counsel should have asked for a more specific direction as to how the damage should be measured, if they so desired.''

In the case at bar counsel for appellant, in addition to the general objection to the instruction as given by the court on the measure of damages, asked an instruction in the precise language approved by this court as the correct rule for ascertaining the damage or actual cash value of the growing crop at the time of its destruction. The court erred in not giving the appellant's prayer for instruction No. 4, for this instruction was correct in itself, and it was tantamount to a specific objection pointing out that the court had failed, in the instruction given on its own motion as to the measure of damages, to lay down a correct rule, indeed, any rule, for the ascertainment of the value of the crop destroyed. In the absence of a correct instruction and proper guide for the jury in ascertaining the measure of the damages to the appellees in the destruction, or partial destruction,

of their growing crops, it cannot be said that the appellant was not prejudiced by the jury's verdict, for it is impossible to determine whether the jury, in fixing the amount of damages, were governed by the proper rule. For the error in refusing to give appellant's prayer for instruction No. 4, the judgment is reversed, and the cause remanded for a new trial.