SOUTHEAST CONSTRUCTION CO., A CORPORATION
v. BILLY EUDY

5-5909                                    480 S.W. 2d 571

Opinion delivered May 22, 1972

[Rehearing Denied June 26, 1972.]

*Barber, Henry, Thurman, McCaskill & Amsler,* for appellant.

*Pickens, Boyce & McLarty,* by: *Tim F. Watson,* for appellee.

CONLEY BYRD, Justice. Appellee Billy Eudy was injured in a headon collision which occurred when a northbound car driven by Lynn Person first veered off onto the east shoulder, came back onto the highway, veered onto the west shoulder and then into appellee's southbound lane of travel. Appellee brought this action against appellant Southeast Construction Company, a corporation, on the theory that Southeast Construction Company was negligent in failing to warn or protect the motoring public from the dangerous conditions created by its construction work on Highway 67 in the area where the collision occurred. The jury found the issues in favor of Eudy.

Appellant contends among other things, that the court erred in refusing to direct a verdict for appellant, in refusing to instruct on an independent intervening cause, in giving a slanted instruction when an AMI instruction was available, and in instructing the jury that Eudy could recover for loss of ability to earn.

No. I. The negligence testimony was given by Eudy, Trooper Scott Brown and Ralph Wyatt, an engineer for the Highway Department in Batesville.

Eudy testified that on the morning of the accident he was going south on Highway 67 and noticed Person's car. The first time that he noticed it he saw the car go off the highway, then off on his side of the road and then come back on the highway and hit him headon. He knew construction was taking place, having driven the same route the preceding evening going home from work. When asked about the highway condition the evening before, he stated:

"A. General, just a general construction with equipment, some equipment along there; some of

it was parked; in fact, I think all of it was parked at that time; some of the materials, sand and rock was piled up alongside the highway. On some parts of it they had built the shoulder up for cars and trucks to come on and off and on other parts of it was an open trench along the edge of the shoulder of the highway."

On cross-examination Eudy was asked if he observed Person's car drop from the paved portion of the highway to Person's right at the time it veered off the highway to the east. In answer Eudy said, "I couldn't have seen it; I was too far away." Appellant's counsel then asked if he saw Person's car drop in any way to which Eudy answered: "I did see; in fact, I think that is when I first noticed it more than anything else was when I saw the right side of it drop or the right front quarter of it drop." Concerning his northbound travel the evening before, Eudy was asked if he remembered having observed any road signs of any character along where the accident occurred or men working, to which he answered: "Not of a specific nature where I can say, well I saw such and such a sign in such and such a place on such and such a day." However, he frankly admitted that he was well aware that the road was under construction at the time. It is also admitted that the weather was dry and the day was clear at the time of the collision.

Trooper Brown testified that he was aware of the construction project to widen Highway 67 north of Newport. He stated that he was familiar with the safety precautions that are ordinarily and customarily taken by contractors undertaking a project such as this. When the construction first started he saw a number of hazardous conditions existing up and down the road a number of times and called them to the attention of the Highway Department's district engineer. In so doing he had suggested that the contractor needed to take precautions to keep their lights and signs in better shape than they had been doing. On cross-examination Trooper Brown clarified his statement by saying that after he made his complaints to the district engineer, the unsafe practices were remedied and that his complaints were made during

the early part of the construction. He specifically stated that he had no complaints with the construction taking place at the time and place where the accident occurred.

Ralph Wyatt, the highway department's district engineer, testified that sometime prior to September 26, two days before the accident, he had had a complaint from the State Police about the laxity or lack of safety precautions of the contractor on this job. As a result thereof, he wrote a letter on Sept. 26, directed to appellant, suggesting that there was a laxity of supervisory personnel in providing adequate warning signs where work was in progress and at places it constituted a hazard to the traveling public. On cross-examination this witness could not determine when the complaint was made nor that the condititons existed at the time of the injuries complained of.

Negligence is ordinarily defined as the failure to do something which a reasonably careful person would do or the doing of something which a reasonable person would not do under the circumstances similar to those shown in evidence. Proximate cause is ordinarily defined to mean a cause which in a natural and continuous sequence produces damage and without which damage would not have occurred. As can be seen from the foregoing testimony of Eudy, Brown and Wyatt, there is no evidence to show that appellant failed to erect warning signs or any other phase of the construction was the cause "which in a natural and continuous sequence" produced Eudy's damage. Consequently, the trial court erred in failing to direct a verdict for appellant.

No. II. Brown testified that if Person had lived he would have been charged with driving under the influence of intoxicants. This assertion by Trooper Brown was made upon his personal observations of Person at the scene of the accident. Under these circumstances the trial court committed error in failing to give appellant's requested instruction, AMI 503, with reference to an independent intervening cause.

No. III. Over appellant's objections the trial court gave appellee's requested instruction No. 1A as follows:

"To find in favor of the plaintiff, Bill Eudy, on the question of negligence, it is not necessary that you find that the defendant, Southeast Construction Company, was completely or one hundred percent at fault. If you find that Southeast Construction Company was at fault to any extent or degree, and that fault proximately caused or contributed to cause this accident, then you should find for the plaintiff, Bill Eudy."

The contents of this instruction are covered by AMI 502 on concurring proximate causes. As pointed out in *Vangilder* v. *Faulk,* 244 Ark. 688, 426 S.W. 2d 821 (1968), the April 19, 1965, per curiam order of this court clearly directs that when an AMI instruction is applicable in a case it shall be used, unless the trial judge finds that it does not accurately state the law. Appellant in objecting to the instruction given pointed out that it was not an AMI instruction. In view of the possibility of a new trial we point out that the AMI instruction should have been given if an instruction is given on the issue.

No. IV. In giving AMI 2207 on the issue of damages, the trial court told the jury that if they found for Eudy on the question of liability they then must fix the amount of money which would reasonably and fairly compensate him, among other things, for "the present value of any loss of ability to earn in the future." The evidence shows that as a result of the collision Eudy is no longer able to engage in any sports activity; his knee buckles often when he attempts to run causing him to collapse; his ability to climb stairs is greatly hampered by the knee injury and his ability to drive an automobile is somewhat hampered because of stiffness in his neck. While there is other evidence tending to show that appellee has had a continuous increase in his earnings from the date of the injury to the date of the trial, we cannot say that there is no evidence of loss of ability to earn in the future.

While we point out that the trial court should have instructed a verdict in favor of appellant, for the reasons pointed out in *St. Louis Southwestern Railway Co.* v.

*Clemens,* 242 Ark. 707, 415 S.W. 2d 332 (1967), we reverse and remand the case for a new trial.

Reversed and remanded.

HARRIS, C.J., not participating.

FOGLEMAN and JONES, JJ., dissenting in part.

JOHN A. FOGLEMAN, Justice, concurring in part, dissenting in part. I concur in the result and in all of the majority opinion except that part relating to loss of earning capacity, or ability to earn in the future. I do not agree that the showing of this appellant's physical handicaps, standing alone, is sufficient evidence to support a jury verdict for that element of damage, particularly in view of the fact that appellant's earnings are greater after the injury than before. It seems to me that, in the absence of other evidence in this case, a jury would be left to pure speculation. It also seems to me that this element of damage, like future pain and suffering, should be shown with reasonable certainty. I also think that the fact that appellant's earnings have continuously increased should give rise to a rebuttable presumption that he has suffered no loss of ability to earn.

I am authorized to state that Mr. Justice Jones joins in this opinion.