PAUL E. DANIELSON, Justice, concurring in part and dissenting in part. I wholeheartedly agree with the majority in its reversal and dismissal of the State’s MFFCA claim; it is only because I reach that conclusion in a slightly different fashion that I respectfully concur in part. Because I disagree with the majority’s conclusion that the DDMAC letter constituted inadmissible hearsay, I respectfully dissent in part. With respect to the State’s MFFCA claim, I believe that the language of Arkansas Code Annotated § 20-77-902(8) is plain and unambiguous. While the State would have this court read subsection (8)(B) standing alone, we simply cannot do so, as a “statute must be analyzed in its entirety and meaning given to all portions.” Commercial Printing Co. v. Rush, 261 Ark. 468, 473, 549 S.W.2d 790, 793-94 (1977). As explained in one authority: | ¾⅞A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section to produce a harmonious whole. Thus, it is not proper to confíne interpretation to the one section to be construed. 2A Sutherland Statutory Construction § 46:5 (7th ed.2013) (internal footnote omitted). Subsection (8) of the instant statute is composed of two parts, (A) and (B), and provides that [a] person shall be liable to the State of Arkansas, through the Attorney General, for a civil penalty and restitution if he or she: [[Image here]] (8) Knowingly makes or causes to be made or induces or seeks to induce the making of any false statement or representation of a material fact: (A) With respect to the conditions or operation of any institution, facility, or entity in order that the institution, facility, or entity may qualify either upon initial certification or upon recertification as a hospital, rural primary care hospital, skilled nursing facility, nursing facility, intermediate care facility for the mentally retarded, home health agency, or other entity for which certification is required; or (B) With respect to information required pursuant to applicable federal and state law, rules, regulations, and provider agreements. Ark.Code Ann. § 20-77-902(8). When (A) and (B) are read together, there is simply no question in my mind that the “information” referenced in part (8)(B) means any information required pursuant to laws or regulations applicable to the certification or recertification of “any institution, facility, or entity,” other than with respect to the conditions or operations of the institution, facility, or entity. Because the State’s MFFCA claim is not encompassed within section 20-77-902(8), I agree with the majority that the circuit court’s judgment should be reversed and the State’s claim dismissed. I, however, would affirm the circuit court’s denial of Janssen’s motion in limine with respect to the State’s claim under the ADTPA, as I cannot say that the circuit court abused ^¡¡its discretion in admitting the DDMAC letter over Janssen’s objections. Assuming that the instant letter was hearsay, it is apparent to me that the DDMAC warning letter falls clearly within the public-records exception set forth in Ark. R. Evid. 803(8). While Janssen avers that the letter is the result of a “special investigation of a particular complaint, case, or incident,” which would preclude its admissibility as an exception to hearsay, I disagree, as I see nothing in the instant record to substantiate such a claim. There appears to be no dispute that the FDA is a regulatory agency or that the DDMAC is responsible for reviewing and regulating the advertising of, or information pertaining to, prescription drugs pursuant to the FDA’s regulatory authority. The warning letter, then, seems to me to unquestionably constitute either a “matter[] observed pursuant to duty imposed by law and as to which there was a duty to report” or “factual findings resulting from an investigation made pursuant to authority granted by law.” Ark. R. Evid. 803(8). Nothing at all in the record before us evidences that the letter resulted from any special investigation of a “particular complaint, case, or incident.” Ark. R. Evid. 803(8)(iv). To the contrary, it appears that the warning letter was merely the result of the agency’s routine duties of reviewing and regulating the information on, and advertising of, drugs such as Risperdal. Janssen’s motion in limine to exclude the DDMAC letter contended that the letter was the result of a special investigation of a particular incident — the mailing of the 2003 DDL. But that argument is belied by the DDMAC’s mission, which is to protect the public health by assuring prescription drug information is truthful, balanced and accurately communicated. This is accomplished through a comprehensive [^surveillance, enforcement and education program, and by fostering better communication of labeling and promotional information to both healthcare professionals and consumers. FDA, The Office of Prescription Drug Promotion (OPDP) (formerly Division of Drug Marketing, Advertising and Communications — DDMAC), http://www.fda.gov/About FDA/CentersOffices/OfficeofMedieal ProductsandTobacco/CDER/ucm090142. htm (last updated Mar. 6, 2014). If it is the DDMAC’s responsibility to monitor or surveil prescription-drug advertising or information, then I think it can hardly be said to conduct a “special investigation” each time it fulfills its routine duty. It is for this reason that I believe Jans-sen’s reliance on the court of appeals’ opinion in McCorkle Farms, Inc. v. Thompson, 79 Ark.App. 150, 84 S.W.3d 884 (2002), is misplaced. In McCorkle, the court of appeals drew just this distinction between findings issued as a matter of routine as opposed to those issued in response to a specific complaint: This distinction may be illustrated by the example of a public agency charged with monitoring water quality in the state’s rivers. If the agency, in fulfillment of its routine duties, tests the water in a flooding river (i.e., resulting from a particular incident, namely, the flood), the factual findings of those tests would be admissible in a civil trial as within the public records or reports exception to the hearsay rule. If, however, the agency conducts an investigation in response to a complaint that someone is dumping material into a river, the factual results of that investigative report would be inadmissible pursuant to Rule 803(8)(iv). See Daniels v. Tew Mac Aero Servs., Inc., 675 A.2d 984 (Me.1996). 79 Ark.App. at 160, 84 S.W.3d at 889. To that end, McCorkle actually supports affirming the circuit court’s denial of Jans-sen’s motion in limine, contrary to Jans-sen’s claims otherwise. Here, there is simply no evidence before us that DDMAC was investigating a particular | S1 complaint, case, or incident.[6] Accordingly, it is clear to me that the DDMAC letter was admissible as a public-records exception to hearsay under Ark. R. Evid. 803(8), in light of the fact that the DDMAC was charged with the responsibility of monitoring and regulating all prescription-drug information. See, e.g., Archer-Daniels-Midland Co. v. Beadles Enters., Inc., 367 Ark. 1, 238 S.W.3d 79 (2006) (holding that a letter statement and warning sent out by the FDA, whose duty was to protect the public from consuming adulterated food, was admissible under Rule 803(8)). We have been resolute that our circuit courts are accorded wide discretion in evidentiary rulings, and we will not reverse such rulings absent a manifest abuse of discretion. See Mays v. St. Pat Props., 357 Ark. 482, 182 S.W.3d 84 (2004). Because I cannot say that the circuit court manifestly abused its discretion in denying Janssen’s motion in limine to exclude the DDMAC letter, I would affirm the circuit court’s ruling, and I respectfully dissent on this basis. HANNAH, C.J., and CORBIN, J., join. . Whether the DDMAC’s warning letter was informal or not has no bearing on the matter, in my opinion; the fact that such a letter merely communicates the agency’s position on a matter, as opposed to a legal conclusion, further reinforces my conclusion that such a letter is not the product of a "special investigation.” Clearly the DDMAC letter found that Janssen's DDL was in violation of federal law; however, the finding that it did so in no way compels me to conclude that there was a special investigation. Nor does Ms. Plunk-ett’s testimony compel me to reach such a conclusion. As I read the colloquy between Ms. Plunkett and counsel, it seems to reference the FDA’s own complaints or issues with the DDL, rather than complaints made to the agency by an external entity or individual.