Billy BROOKS *v*. STATE of Arkansas

CR 91-196                                    827 S.W.2d 119

Supreme Court of Arkansas
Opinion delivered March 23, 1992

*Larry W. Horton*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for for appellee.

ROBERT L. BROWN, Justice. On June 14, 1991, the appellant, Billy Brooks, age seventeen, was convicted of aggravated robbery, rape, and kidnapping and sentenced to two terms of life imprisonment plus a term of forty years, respectively. He advances multiple arguments for reversal of his conviction. We hold that his argument regarding double jeopardy and his aggravated robbery conviction has merit, and we reverse that conviction and vacate that life sentence. We affirm his conviction and life sentence for rape and his conviction and forty-year sentence for kidnapping.

On February 28, 1991, at about 6:10 in the evening, the victim, who was co-owner of a grocery store in Malvern, had gone

back to her store to get some items for supper. On entering the store, she observed a boy riding a bike nearby and then saw the appellant walking toward her.When she left the store with the groceries, she was accosted by the appellant, who yelled at her and asked where her husband was. She replied that he was at home, whereupon Brooks grabbed her by the arm and neck, placed a knife at her throat, and said, "Don't lie to me, you damn bitch." He demanded that she open the grocery store and asked where the money was kept because he wanted money. When she answered that she did not have a key to that door, the appellant stabbed her in the hand, severing an artery and nerve.

The boy on the bicycle told the appellant to leave the victim alone, and the appellant replied that he would kill the boy, too. The woman shouted to the boy to go get help. The appellant again demanded entry into the store, and when the victim answered that she could not unlock the door, he stabbed her a second time. When the victim tried to show that her key did not fit the door, she testified, ". . . he jerked the key out of my hand and just, like he just went beserk, he just started stabbing me." Her lung was punctured as a result of the stabbing.

The woman was then dragged by the appellant 170 feet behind the store to an unoccupied car, where he told her that he was going to rape her. He removed her clothes from the waist down and pulled his clothes down and penetrated her. Following that, he said that he was going to rape her again. He then said that he was going to taker her out of town. He tried to start the car but to no avail. The police arrived, and he was arrested.

The appellant spent the night in the Hot Spring County jail and in the morning was found in his cell naked and wrapped in toilet paper. He was transported to the Malvern police station where, at about 10:36 a.m., he was given his *Miranda* warnings. He was given the warnings a second time at 12:23 p.m., and subsequent to the second warnings, he gave a statement that placed him at the crime scene, although he denied committing the crimes for which he was charged. In his statement, he admitted drinking a considerable amount of vodka and taking LSD before the attack on the woman.

At trial on June 14, 1991, the appellant moved for a directed verdict on the three charges following the state's case. The circuit

court granted the motion on the aggravated robbery charge on the mistaken belief that aggravated robbery required that something be taken from the victim. At the end of all of the evidence, the court reversed itself and instructed the jury on the aggravated robbery charge. The jury convicted the appellant of aggravated robbery as well as rape and kidnapping and sentenced him to two life terms and forty years.

## I. Double Jeopardy

After the state rested and the appellant had moved for a directed verdict on all counts due to the insufficiency of the evidence, the following discussion took place among the circuit court, the prosecutor, and defense counsel:

THE COURT: As to aggravated robbery, I think it should be granted. So, it's granted as to the offense of Aggravated Robbery.

PROSECUTOR: Your Honor, I don't think it should be granted as to Aggravated Robbery. The fact that he didn't complete the robbery, the fact that he told her to open the door, he wanted the money, that constitutes Aggravated Robbery.

THE COURT: That's just an attempt, isn't it.

DEFENSE COUNSEL: Just an attempt.

PROSECUTOR: Well, are you going to instruct them on attempted aggravated robbery? It becomes aggravated robbery when you put someone in physical jeopardy.

THE COURT: You also have to take something from them. Otherwise, it's just aggravated assault.

DEFENSE COUNSEL: Your Honor, I believe that our argument all along has been that battery, first degree is a lesser included of aggravated robbery.

THE COURT: I know what your arguments have been but the question is whether there is evidence that supports submitting the issue of aggravated robbery.

DEFENSE COUNSEL: I don't believe there is, Your

Honor.

PROSECUTOR: I think that if I tell you that I am going, I want your money and point a gun at you, even if I never did anything, I'm guilty of aggravated robbery.

THE COURT: I believe it's aggravated assault. I don't think it's aggravated robbery.

DEFENSE COUNSEL: Motion is granted on that?

THE COURT: The motion is granted on the charge of aggravated robbery.

At the conclusion of all of the evidence, the court reversed itself and this colloquy ensued:

PROSECUTOR: Before the State rests, I want to make sure it's in the record that the Court has reversed it's earlier ruling on aggravated robbery.

THE COURT: Right, battery will be a lesser included offense of aggravated robbery.

DEFENSE COUNSEL: Your Honor, we're going to object to the Court's reversal of the ruling. The Court rules in favor of the defendant on a directed verdict. That means that there has been a verdict of acquittal by the Court's order entered and to submit this to the jury at this point in time, constitutes double jeopardy in violation of the United States Constitution.

THE COURT: The Court reverses the ruling. The matter of aggravated robbery may be submitted to the jury.

. . . .

THE COURT: All right, Mr. Horton, let's complete our record on the aggravated robbery charge. You made a motion for a directed verdict on the aggravated robbery charge at the close of the State's case. The Court was under the misunderstanding that aggravated robbery required an actual theft of property and granted the motion at a bench conference where the jury could not hear. The Court was then informed that only attempted theft of property

was necessary to constitute aggravated robbery and has reversed that dismissal of the case and reinstated it for the jury's consideration. The Court simply corrected the error that the Court made, the error of law that the Court made. The jury is not present now. They have not been instructed and I'm going to let you make any further record that you want to on that issue.

DEFENSE COUNSEL: Your Honor, the defense's position is that the Court has issued a ruling of a directed verdict on the charge of aggravated robbery. A directed verdict is a judgment of acquittal. It is a judgment of acquittal just as if a jury had returned a judgment of acquittal. To now reinstate the charge, is not harmless error. It constitutes a second charge for the same offense and violates the double jeopardy clause of the Constitution of the United States. We ask the jury not be given that instruction, Your Honor.

THE COURT: Denied.

■ This precise double-jeopardy issue is one of first impression in Arkansas, and we turn to the U.S. Supreme Court and to other jurisdictions for guidance. The Supreme Court has made it clear that a decision that the evidence is legally insufficient to sustain a guilty verdict constitutes an acquittal for purposes of the Double Jeopardy Clause. *Smalis* v. *Pennsylvania*; 476 U.S. 140 (1986); *Sanabria* v. *United States*, 437 U.S. 54 (1978); *Burks* v. *United States*, 437 U.S. 1 (1978); *United States* v. *Martin Linen Supply Co.*, 430 U.S. 564 (1977).

In *Smalis*, the Court was presented with an analogous issue to that before us in the present case. The defendant demurred at the end of the state's case on grounds of insufficient evidence, and the trial court granted the demurrer. The state then sought to appeal, and the Pennsylvania Supreme Court remanded the case to the trial court for trial on the merits. The U.S. Supreme Court reversed, holding that the Double Jeopardy Clause bars a post-conviction appeal. A dismissal for insufficient evidence, such as we have before us in the present case, amounts to an acquittal even when the dismissal is based on an erroneous evidentiary ruling. *Sanabria* v. *United States, supra.*

Several jurisdictions have concluded that granting a motion for insufficient evidence on a charge at the close of the state's case precludes the trial court from reversing that decision and submitting the charge to the jury. *See Lowe* v. *State*, 744 P.2d 856 (Kan. 1987); *State* v. *Carney*, 374 N.W.2d 59 (Neb. 1985); *In the Matter of Dowling*, 656 P.2d 497 (Wash. 1983).

In *Lowe* v. *State*, the defendant was charged with burglary and misdemeanor theft. The trial court dismissed the theft charge on its own motion. The next day the court reversed its decision, and the trial resumed. The jury found the defendant guilty of theft and acquitted on the burglary charge. On appeal, the Kansas Supreme Court relied on *Smalis* v. *Pennsylvania, supra*, and reversed the conviction on the basis that jeopardy attached at the trial and the dismissal constituted an acquittal of the theft charge.

The case of *State* v. *Carney* is similar. After the state rested its case for theft, the defense moved for acquittal for failure to make a prima facie case, and the court granted the motion. The state then asked to reopen its case and present additional evidence which the court also granted. The Nebraska Supreme Court held that it was error to permit the state to reopen its case after jeopardy had attached and a resolution of guilt had been made.

*In the Matter of Dowling* the trial court in a bench trial dismissed a theft charge at the conclusion of the state's case due to the defendant's lack of capacity. Four months later, the court reversed itself on a motion for reconsideration. The Washington Supreme Court concluded that the trial court could not later find the defendant guilty of the same crime.

These cases cover varying times when the trial court sought to reverse itself. In *Lowe*, the decision was the next day but while the trial was on-going. In *Carney*, the decision to allow the state to reopen its case was almost immediate. In the case before us, the circuit court waited until the conclusion of all evidence to place on the record its decision that it was submitting the robbery charge to the jury.

■ We hold that the circuit court's granting of the motion to dismiss constituted a judgment of acquittal on the robbery charge. Accordingly, for the court to submit that charge to the

jury at the end of the trial constituted double jeopardy. We are further mindful of the fact that dismissing the robbery charge and then reinstating it at the conclusion of all the evidence could well have curtailed the appellant's ability to present a full defense to this charge. The prejudice under such circumstances is clear.

The state cites two cases in opposition to our holding today. *See State* v. *Iovino*, 514 A.2d 556 (R.I. 1987); *People* v. *District Court*, 663 P.2d 616 (Colo. 1983). The cases are distinguishable on their facts. In both instances, the trial court dismissed the greater offenses but continued the trial for lesser included offenses. The court then decided to reinstate the original offenses. That is not the fact situation before us in this case. Moreover, in both cases the appellate court determined that there was no prejudice to the defense waged by the defendant.

## II. Directed Verdict on Kidnapping and Rape

The appellant is procedurally barred from raising the issue of sufficiency of the evidence as to kidnapping and rape, since he failed to renew his motion at the close of all of the evidence. Our rule of criminal procedure is clear that the failure to challenge the sufficiency of the evidence at both the close of the state's case and the close of all of the evidence "will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the jury verdict." Ark. R. Cr. P. 36.21(b). We have affirmed the rule repeatedly in our decisions. *See, e.g., Rudd* v. *State*, 308 Ark. 401, 825 S.W.2d 565 (1992). We do so again today.

## III. Admissibility of Knife into Evidence

A knife was found between the front seat and console in the car where the attack occurred. The woman told police officers that the knife used against her was thrown "over into the back seat, between the seat." The appellant cites this inconsistency on the knife's location as reason for inadmissibility. In addition, the appellant points to the State Crime Lab's testing of the knife and the fact that the results were inconclusive for blood type. The appellant also considers relevant expert testimony from a state's witness that he could not testify with any degree of medical certainty that the knife found in the car was the knife used to slash the grocery items held by the victim and the victim herself.

The appellant's primary argument on this score is that the circuit court abused its discretion in admitting an irrelevant piece of evidence that could not be tied directly to the attack and, further, that the knife unduly prejudiced the jury. We disagree. The knife was found in the car, which was the site of the crime, and the victim was cut by a knife. The instrumentality used to inflict fear is patently relevant to the crimes for which the appellant is charged, all of which include an element of force for perpetration. Whether this was the actual knife used was a matter for the jury to decide, but it was relevant to corroborate the testimony of the victim concerning the stabbings.

■ We have previously held that the admission of a fish stringer found at the home of the accused similar to that used to tie the hands of a murder victim was admissible as circumstantial evidence of guilt. *See Miller* v. *State*, 280 Ark. 551, 660 S.W.2d 163 (1983). We hold that under these facts the knife was relevant, and no prejudice resulted to the appellant under our Rules of Evidence. *See* Ark. R. Evid. 401, 403.

### IV. Additional Psychiatric Examination

The appellant next asserts that the psychiatric evaluation performed by a psychiatrist, Dr. William James, at the Southeast Arkansas Mental Health Center was incomplete due primarily to the fact that he did not have the benefit of Brooks' prior criminal and medical records, including his psychiatric record, in making his evaluation. Dr. James concluded that the appellant had an antisocial personality disorder and suffered from substance abuse but possessed a culpable mental state at the time of the crimes. His report stated:

> On the basis of this examination and Mr. Brooks' comments in the intoxicated state in which he apparently chose to place himself by means of the alcohol and other drug consumption, he may have been unable to conform to the requirements of the law at the time of the alleged conduct. Nevertheless, Mr. Brooks does state in the interview that he is opposed to rape and "don't believe in that." Mr. Brooks was, by virtue of his voluntary consumption of intoxicating substances, in a culpable mental state at the time of the offense charged on the basis of the apparently very complex act that he states occurred which involved

stabbing Ms. Wright "three or four times" and detaining her forcibly in the automobile, where Mr. Brooks states he was apprehended and arrested.

The circuit court ruled that the psychiatrist had found the appellant sane and had then gone forward and commented on the legal point that even if the appellant was voluntarily intoxicated at the time of the crimes, this was not a defense. The court refused a second evaluation. This decision was correct.

■ The appellant's first examination was by a psychiatrist at a regional mental health center which the applicable statute specifically permits. *See* Ark. Code Ann. § 5-2-305 (1987). Dr. James's report explicitly refers to the appellant's history of substance abuse, incarceration for delinquency, and psychiatric problems. We hold that though Dr. James may not have had before him the full medical, psychiatric, and delinquency records of the appellant, his report substantially complies with the requirements of state law as set out in Ark. Code Ann. § 5-2-305(d) 1-4. *See Beard* v. *State*, 306 Ark. 546, 816 S.W.2d 860 (1991); *see also, Ball* v. *State*, 278 Ark. 423, 646 S.W.2d 693 (1983). The circuit court did not err on this point.

## V. Probation Officer Testimony

■ The appellant also contends that the circuit court was in error in refusing to allow a juvenile probation officer to testify about his past delinquency record. The allegation of error is procedurally barred because the appellant failed to make a proffer at trial of what the probation officer's testimony would have been. We do not reverse because of asserted error in the circuit court's exclusion of a witness's testimony in the absence of a proffer of what the witness's testimony would have been. *Bennett* v. *State*, 307 Ark. 400, 821 S.W.2d 13 (1991); *Thompson* v. *State*, 306 Ark. 193, 813 S.W.2d 249 (1991).

## VI. Failure to Reveal State's Witness

■ The appellant argues that the state was remiss in not listing the name of Arkansas State Trooper Ron Ball on its prospective witness list pursuant to Ark. R. Crim. P. 17.1, and that this was reversible error. The report of the state trooper was received by the appellant prior to trial and during discovery, and

he testified to matters contained in that report. The argument fails due to lack of any revealed prejudice to the appellant. *See Prince* v. *State*, 304 Ark. 692, 805 S.W.2d 46 (1991); *Smith* v. *State*, 303 Ark. 524, 798 S.W.2d 94 (1990).

## VII. Use of In-Custodial Statement

After his second *Miranda* warning, the appellant gave a statement to the Malvern police. He denied committing the crimes and placed the blame on someone else. At the same time, he admitted being at the crime scene and being involved, though he denied stabbing the victim.

The state used the statement to rebut the appellant's testimony at trial, and the appellant contends that the statement was not knowingly and intelligently made. The appellant focuses particularly on not knowing what the word "coercion" meant in the waiver of rights form, which the appellant signed.

An in-custodial statement may not be used for impeachment purposes if it was coerced. *Mincey* v. *Arizona*, 437 U.S. 385 (1978). The burden is on the state to show that an in-custodial statement was made voluntarily, intelligently, and without hope of reward or fear of punishment. *Jackson* v. *State*, 284 Ark. 478, 683 S.W.2d 606 (1985). At a hearing on the admissibility of the appellant's statement, the Malvern police lieutenant and a juvenile court in-take officer who were present when the statement was given testified that no coercion had been employed. As a consequence, the circuit court found no coercion and ruled the statement admissible.

Conflicts in testimony regarding whether a statement is knowingly and intelligently made are for the trial court to resolve. *Jackson* v. *State, supra.* Here, we hold that there was no abuse of discretion in admitting the statement into evidence.

## VIII. Additional Scientific Testing of State's Evidence

[10 11] The appellant sought retesting of vaginal swabs from the victim and three knives recovered from the crime scene. These items had been tested by the State Crime Lab, and the results proved inconclusive, neither inculpating nor exonerating the appellant. The appellant presents no convincing basis for more tests, other than the first tests were inconclusive. Further-

more, apart from a broadly based argument, the appellant cites no authority establishing his entitlement to a second series of tests. Without cited authority, we need not address this issue. *Ray* v. *State*, 304 Ark. 489, 803 S.W.2d 894 (1991).

## IX. Continuance

■ The appellant moved to continue the trial because the examining psychiatrist, Dr. James, was unavailable to testify at trial. Brooks concedes that a motion for a continuance is a matter entrusted to the sound discretion of the circuit court and that reversal must be predicated on an abuse of discretion. *Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991). The appellant, however, failed to file an affidavit pursuant to Ark. Code Ann. § 16-63-402(a) (1987) setting forth, among other things, the facts that the affiant believes the unavailable witness would prove. We have underscored the necessity for this affidavit in justifying a continuance in previous cases. *See, e.g., Ray* v. *State, supra.* There was no abuse of discretion on this point.

The objections in the record have been abstracted, and we have further examined the record in accordance with Ark. Sup. Ct. R. 11(f) and have determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed in part; reversed in part.