James Vernon McLENNAN *v.* STATE of Arkansas

CR 98-760 987 S.W.2d 668

Supreme Court of Arkansas
Opinion delivered March 18, 1999

*Brenton D. Bryant*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly S. Terry*, Ass't Att'y Gen., for appellee.

L AVENSKI R. SMITH, Justice. Appellant James Vernon McLennan ("McLennan") appeals his conviction on three counts of terroristic acts, one count of aggravated assault and one count of felon in possession of a firearm from the Washington County Circuit Court. All the charges arose from an incident in which appellant fired multiple shots from a handgun into his former girlfriend's apartment. His aggregate sentence is 540 months in the Arkansas Department of Correction. This case was certified to the Arkansas Supreme Court pursuant to Ark. Sup. Ct. R. 1-2(b)(6) for an interpretation of Ark. Code Ann. §§ 5-13-310(a)(2) (Repl. 1997) and 5-1-110(a)(5) (Repl. 1997).

Appellant raises three points for reversal on appeal. Appellant first contends that his convictions on three counts of terroristic acts rather than on one count violated his Fifth Amendment right to be free from double jeopardy. He contends that his shooting into the apartment was an uninterrupted and continuous act and not a series of three separate acts. Appellant next contends that

the trial court erred in denying his motion to suppress his pretrial statements made during interrogation based on the circumstances surrounding his waiver of his constitutional rights. Finally, appellant contends that the trial court erred in overruling his objection regarding the introduction of the victim's testimony regarding an attempted bribe by appellant to induce the victim not to testify at the trial. We find no merit in any of appellant's contentions and affirm.

On September 23, 1997, appellant appeared at the apartment of Onita Jenkins, appellant's former girlfriend and mother of his two children. Appellant knocked on the door, but Jenkins refused him entry. The two argued, and appellant left the premises. Appellant returned shortly thereafter and asked Jenkins to go to the back of the apartment to a kitchen window to talk. Jenkins agreed to talk but steadfastly refused him entry. After speaking to one another for a moment, Jenkins noticed that appellant had a gun. Jenkins immediately fled from the window, gathered her children and hid in the bathroom, where she called 911. During this time, appellant, after unsuccessfully attempting to fire the weapon, raised it to the window and fired three quick, successive shots through the kitchen window into the apartment. Fortunately, no one was injured by the gunshots.

Appellant was later picked up by the Fayetteville police at his current girlfriend's house. The police arrested him and took him to the Fayetteville City Jail. On the morning of September 24, 1997, Fayetteville Police Detective Timothy Franklin questioned appellant at the Detective Division in the police department. During the interview, Officer Franklin wore his badge, but did not have his gun. At the onset of questioning, Officer Franklin read appellant his Miranda rights, and had appellant complete a "CID" form, a form which the Fayetteville Police Department regularly uses to explain and verify a suspect's *Miranda* rights. Routinely, the form is read and explained by the officer, who also allows the defendant to read and initial each paragraph to verify the defendant's understanding of his rights. Appellant completed this form during his interrogation.

After Officer Franklin and appellant completed and signed the "CID" form, Officer Franklin completed an information form by gathering information from appellant, including his name, age, social security number, address, and other pertinent data. Officer Franklin then began questioning appellant and, in doing so, began to take notes of the interview. Officer Franklin, however, ceased taking notes when appellant began taking a serious interest in what he was writing. Officer Franklin testified at a suppression hearing prior to trial that it was his practice to cease taking notes at an interrogation when a defendant pays such close attention because his experience had been that the defendant "becomes somewhat reluctant to continue parts of sentences if they feel they may have said something important." Officer Franklin memorialized the interview by recording his report on a micro-cassette which was later transcribed into a typed report.

During the trial, Officer Franklin testified that he questioned appellant about prior criminal convictions he had in Texas, as well as the events which resulted in the current charges being brought against appellant. Officer Franklin testified that appellant denied most of the report of the incident from the day before. Onita Jenkins also testified at the trial regarding the events of September 23, 1997. Additionally, Jenkins testified that subsequent to McClennan's arrest but prior to the trial, appellant attempted to "bribe" her into refusing to testify by promising to pay her $700. Appellant objected to admission of this testimony but the court overruled the objection finding the testimony relevant.

At the conclusion of the trial, the jury returned guilty verdicts on all counts, including each of three counts of terroristic acts brought for each of the three shots fired into the apartment. Appellant moved for a directed verdict at the conclusion of his case and the conclusion of trial on two of the three counts of terroristic acts or, in the alternative, all of the terroristic acts, contending that it was violation of the Double Jeopardy Clause for him to be convicted on four separate offenses for one course of conduct. He appeals the court's denial of that motion.

## I. Standards of Review

 In criminal· cases, this Court will affirm if there is substantial evidence to support the verdict. *Smith v. State*, 296 Ark. 451, 757 S.W.2d 554 (1988). The Court reviews the evidence in the light most favorable to the appellee. *Id.* In reviewing the validity of a statement made to the police, we review the totality of the circumstances and reverse the trial court only if its decision was clearly erroneous. *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998). Determining the relevancy of evidence and the probative value of that evidence against the unfair prejudice pursuant to Ark. R. Evid. 403 is within the trial court's discretion which will not be reversed on appeal absent a manifest abuse of that discretion. *Brown v. State*, 54 Ark. App. 44, 50, 924 S.W.2d 251 (1996) and *Hill v. State*, 325 Ark. 419, 931 S.W.2d 64 (1996).

### Double Jeopardy

Appellant's first point on appeal is whether the terroristic act of shooting into an occupiable structure under Ark. Code Ann. § 5-13-310(a)(2) is a "continuous offense." Appellant contends that Ark. Code Ann. § 5-1-110 should bar his being charged with multiple counts because the shots were part of a single impulse and thus constituted a continuous offense. Appellant contends that these multiple charges violated his Fifth Amendment right to be free from double jeopardy for being charged and tried multiple times for the same crime. In this case, the State charged appellant with three counts of terroristic act under the statute and obtained conviction on all three, one for each of the three shots he fired into the apartment.

██ ██ The general rule in Arkansas is that a "continuing course of conduct crime" under Ark. Code Ann. § 5-1-110(a)(5) may only be prosecuted under one charge. *Hagen v. State*, 318 Ark. 139, 883 S.W.2d 832 (1994) and *Smith v. State*, 296 Ark. 451, 757 S.W.2d 554 (1988). A "continuing offense" is one that is a "continuous act or series of acts set on foot by a single impulse and operated by an unintermittent force." *Britt v. State*, 261 Ark.

488, 549 S.W.2d 84 (1977). The test to determine if a situation involves a continuing offense is "whether the individual acts are prohibited, or the course of action which they constitute; if the former, then each act is punishable separately; if the latter, there can be but one penalty." *Id.*, 261 Ark. at 493, quoting Wharton, *Criminal Law*, 11th ed. § 34, n. 3. Put another way, "when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." *Id.* Examples given in *Britt* and cited in several subsequent cases of continuing offenses include nonsupport [Ark. Code Ann. § 5-26-401], promoting prostitution [Ark. Code Ann. §§ 5-70-104 — 106], and erecting or maintaining a gate across a public highway [Ark. Code Ann. § 5-71-214].

■ Appellant contends that a violation of Ark. Code Ann. § 5-13-310 "Terroristic Act" is a continuing-course-of-conduct crime, which should limit the charges against him under this statute to one charge for shooting into the apartment three times. The pertinent part of this statute states:

(a) For the purposes of this section, a person commits a terroristic act when, while not in the commission of a lawful act:

* * *

(2) He shoots with the purpose to cause injury to person or property at an occupiable structure.

Nothing in this statute defines this crime as being a continuous-course-of-conduct crime, or even gives the impression that it was created with such a purpose. One could argue that the word "shoots" includes multiple shots, but it would not be the preferred reading of the statute. There is no question that one shot would be sufficient to constitute the offense. Multiple shots, particularly where multiple persons are present, pose a separate and distinct threat of serious harm for each shot to any individual within their range. Moreover, had appellant fired his weapon and injured or killed three people there is no question that multiple charges would ensue. Each of appellant's shots required a separate con-

scious act or impulse in pulling the trigger and is accordingly punishable as a separate offense.

We have previously addressed the continuous-course-of-conduct question. In *Smith v. State*, 296 Ark. 451, 757 S.W.2d 554 (1988), a case akin the one at bar, the defendant was convicted of seven counts of terroristic threatening in the first degree and seven counts of false imprisonment, and sentenced to a total of 252 years. In *Smith*, the defendant held seven people at gunpoint at his place of employment when he and his employer got into an argument. On appeal, Smith argued that his conduct was one uninterrupted event based on one impulse, so the multiple counts could not lie. However, the Court determined that terroristic threatening was not defined as a continuing offense in the statute, so Ark. Code Ann. § 5-1-110(a)(5) could not apply. In addition, the Court pointed out that had Smith shot the seven people, he would not have been convicted of only one count of murder. *Smith* is similar to this case now before the Court. First, the Court found in *Smith* that "terroristic threatening" under Ark. Code Ann. § 5-13-301 is not a continuous-course-of-conduct crime. Notably, this statute is found in the same subchapter as "terroristic act" at Ark. Code Ann. § 5-13-310. In addition, the seven counts of terroristic threatening found in Smith occurred during one "episode." Although McLennan's actions took place during one period of time, they should be considered separate offenses.

In *Ricks v. State*, 327 Ark. 513, 940 S.W.2d 422 (1997), this Court determined that rape is not a continuing offense. In *Ricks*, cited by the State here for analogy, the defendant was convicted on four counts of rape. On appeal, Ricks contended that he could only be convicted of one count, because rape should be a continuing-course-of-conduct crime. The Court disagreed, and determined that each episode of rape and each means of penetration during the rapes constituted different occurrences of an "impulse" to allow four counts to be sustained. In *Hagen v. State*, 318 Ark. 139, 883 S.W.2d 832 (1994), the defendant was convicted on three counts including terroristic threatening, battery, and attempted kidnapping, all stemming from his attempt to abduct a

woman at a grocery store parking lot. The defendant argued on appeal that his conduct was a continuing course of conduct crime which should have only sustained one charge of attempted kidnapping since the other charges were included in that crime. However, this Court determined that "the evidence displayed an impulse to kidnap the victim and additional impulses to batter and threaten to kill her when she resisted the kidnapping." *Id.*, 318 Ark. at 141.

■ We hold the appellant's firing three shots into the apartment constituted three separate terroristic acts for purposes of Ark. Code Ann. § 5-13-310, and, therefore, the trial court's ruling is affirmed.

## Miranda *Waiver*

■ Appellant next contends that the denial of his motion to suppress at a pretrial suppression hearing was reversible error. Appellant attempted to have his statements made during the police interrogation suppressed on the basis of an invalid waiver of his Constitutional rights due to the circumstances surrounding the interrogation. Appellant's waiver of his *Miranda* rights is reviewed by this Court under a totality-of-the-circumstances test. *Sanford, supra.* The Court makes this determination by looking at the circumstances surrounding the waiver, including the appellant's age, education, background, and intelligence. *Id.*, 331 Ark. at 346. In using these guidelines, the Court determines whether the appellant waived his rights "with the full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*, quoting *State v. Bell*, 329 Ark. 422, 948 S.W.2d 557 (1997).

Appellant is an adult who has had experience with the criminal justice system when he was convicted of felonies and misdemeanors in Texas. Appellant argues that the circumstances surrounding his interrogation were peculiar because the police detective did not take notes or a recording of the conversation. However, the police detective did have appellant read, initial, and sign a *Miranda* rights waiver form at the beginning of the inter-

view. The police detective indicated that he was under the belief that appellant understood the rights he was giving up by speaking with him.

Mixed into appellant's *Miranda* waiver argument are two additional points which were raised but never argued. First, appellant cites court rules regarding the determination of the voluntariness of confessions made during a police interrogation. Generally, a custodial confession is determined to be involuntary, and the burden is on the State to show that the statement was made voluntarily, knowingly, and intelligently. *Hood v. State*, 329 Ark. 21, 947 S.W.2d 328 (1997). Again, in reviewing the voluntariness of the confession, the appellate court performs a totality of the circumstances review, considering the following factors: age, education, and intelligence of the accused, lack of advice as to his Constitutional rights, length of detention, the repeated and prolonged nature of questioning, or the use of physical punishment, statements made by the interrogating officer and the vulnerability of the defendant. *Id.*, citing *Kennedy v. State*, 325 Ark. 3, 923 S.W.2d 274 (1996) and *Oliver v. State*, 322 Ark. 8, 907 S.W.2d 706 (1995). None of the above factors raises any question regarding the circumstances of appellant's statement. For example, appellant was an adult who had prior experience with the criminal justice system. He read, initialed, and signed a *Miranda* waiver form, and the interrogation only lasted approximately forty minutes at most. In addition, there is no evidence that the police detective promised anything in return for a statement. Appellant mentions the fact that his statements could not have been voluntarily made because he did not have an attorney present when he spoke with the detective. However, there is no contention by the appellant that he ever requested to have an attorney present at the questioning and, in fact, his initials and signature on the *Miranda* waiver form so indicate. Appellant cites *Metcalf v. State*, 284 Ark. 223, 225, 681 S.W.2d 344 (1984), for the proposition that "the supposed willingness to make an uncounseled statement is immaterial." However, in *Metcalf*, the defendant requested the presence of an attorney, and one was not provided to him before the police

began their interrogation. We find no merit to appellant's assertion that the trial court erred in admitting his statement.

### Ark. R. Evid. 403 Objection

For his final point on appeal, appellant contends that the trial court erred in admitting testimony from Onita Jenkins, the victim, regarding an attempted bribe by appellant to keep Jenkins from testifying against him at trial. This point is also meritless. Jenkins testified that appellant offered her $700 not to testify. Appellant objected at trial, claiming that such testimony was more prejudicial than probative and should be excluded under Ark. R. Evid. 403. In addition, appellant argued that this alleged offer had no relevancy to the issues before the court. Ark. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 states that relevant evidence is generally admissible, but is limited by Rule 403 on grounds including prejudice.

We have previously held such testimony to be admissible as evidence of subsequent crimes or wrongs. In *Henderson v. State*, 322 Ark. 402, 910 S.W.2d 656 (1995), we joined other jurisdictions in holding that evidence of witness tampering is relevant and probative of consciousness of guilt. In allowing the testimony, the court, after citing similar holdings in other jurisdictions, stated, "Certainly, a factfinder is entitled to know whether a defendant attempted to thwart his prosecution by secreting a witness who had implicated him in the charged offense." *Henderson*, supra at 408. The same would hold true for an attempted bribe. We hold that there was no error in admitting evidence of an attempted bribe. The judgment of the trial court in all points is affirmed.

Affirmed.