Martha Ann LEWIS *v.* STATE of Arkansas

CA CR 00-844                                         44 S.W.3d 759

Court of Appeals of Arkansas
Division IV
Opinion delivered May 2, 2001

*Robert L. Herzfeld, Jr.*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Leslie Fisken*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Martha Lewis was convicted by a jury of second-degree terroristic threatening and of disorderly conduct. She was sentenced to concurrent jail terms of ninety days for the terroristic threatening and thirty days for the disorderly conduct, as well as to a fine of $100 for the latter offense. In her sole point on appeal, she contends that the trial court erred in allowing testimony about a prior incident of misconduct that was unrelated to her. We agree that the trial court erred; however, we conclude the error was harmless and affirm.

The charges against Lewis arose from a disturbance call at her mother's residence on the afternoon of January 10, 1999. When Benton Police Department officers arrived in response to the call, Lewis was standing on the porch, screaming. She cursed the officers and several times ordered her teenage son to "let the dogs out on these m—— f——." The young man walked towards a wire pen where two pit bulls were standing on their hind legs and jumping at the gate, but ultimately the dogs were not released.

Lewis objected both in a pretrial motion and at trial to testimony that the officers who answered the disturbance call had been present at the same residence over a year earlier when a state trooper shot and killed a pit bull that attacked the trooper and his dog.

In a hearing on Lewis's pretrial motion to suppress, her counsel informed the court of the basis of her objection:

> I want the Court to note my objection, because I'm thinking that the Prosecution is trying to use an incident of prior criminal or prejudicial behavior on the part of somebody else that they cannot even remotely tie to my client to inflame or prejudice the jury

against my client. I mean, my client can testify right now that the time this prior incident happened she lived in the State of Indiana, did not live in the State of Arkansas. Those dogs which they're talking about were not her dogs.

The trial court ruled as follows:

I understand, but it is permissible to ask a person about his present state of mind at the time that something is going on. If the present state of mind involves a fear, it is permissible to ask why you were afraid at that time. That is permissible. It may be a way of back-dooring it, but it is permissible to do it that way.

The court also ruled that counsel could ask the officers why they were afraid, and that if their testimony was that they were aware of a prior incident, he could "to a certain extent go into it for that reason."

Patrol Sergeant Darin Clay testified to the events that occurred when he and Officer Calvin answered the disturbance call. He said that as the officers stepped out of their vehicles, Lewis came out through her front door and yelled, "I'm right here. M—— f——, come on up." When the officers walked into the yard, Lewis looked to her left and yelled to her son, Arquis, "Let the dogs out on these m—— f——." The officers commanded Arquis to stop several times, but he walked to the gate and put his hand on the latch. The officers then drew their weapons and held them ready, pointed at the ground. They told Arquis they would shoot the dogs if he let them out, but Lewis continued to order him to let the dogs out "on" the officers. At one point Arquis stopped, but his mother again told him to let the dogs out, and he walked back and put his hand on the gate again. Finally, he obeyed the officers' orders and walked away from the gate.

Clay testified that he was concerned for the safety of bystanders, his fellow officer, and himself. His testimony continued:

I perceived this as a threat because Officer Calvin and I had responded to the house before on a call, of dogs fighting, at which time we made contact with several individuals at the residence and several pit bulls which were engaged in a fight as we came up. The dogs had sustained several injuries. This was before the day in question. I had been there before.

Defense counsel objected to the testimony unless the prosecution could link it to his client "in some shape, form, or fashion." The objection was overruled. Clay then testified that over a year before the event involving Lewis, he and Calvin had been to the same residence to answer a disturbance call that involved fighting pit bulls. Regarding the earlier incident, Clay related that one pit bull had to be killed at the scene because it ripped the awning of the house, where it had been tied, and attacked a state police trooper and his Labrador retriever, the pit bull dragging the awning with him as he lunged and attacked. Clay further testified that Lewis was not there on the day of this incident and that the dogs belonged to her brother. He stated that although he could not prove it, he believed the dogs that were at the house before and after Lewis lived there were the same dogs.

Officer Calvin's testimony essentially matched that given by Officer Clay regarding the incident when the state trooper was attacked and the incident involving Lewis. He stated that he feared for his life when Lewis told her son to let the dogs out because he had answered calls where pit bulls had attacked people and had seen the injuries inflicted by the dogs. He testified that he did not want to take the chance of being maimed or killed and didn't want anyone else to be attacked. He testified that one thing that contributed to the reason for his fear was that he had responded to the previous call regarding fighting dogs at the residence and had been present with Officer Clay when the state trooper was attacked by one of the pit bulls.

Lewis argues on appeal that the previous incident was unrelated to her, or alternatively, that if the incident was relevant, it was more prejudicial than probative and should have been excluded. These arguments are based upon Ark. R. Evid. 401 and 403. Rule 401 states that relevant evidence is any evidence having the tendency to make the existence of a material fact more probable or less probable than it would be without the evidence. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Determining the relevancy of evidence and the probative value of that evidence against the unfair prejudice pursuant to Ark. R. Evid. 403 is within the trial court's discretion, the exercise of which will not be reversed on appeal absent a manifest abuse of that discretion. *McLennan v. State*, 337 Ark. 83, 987 S.W.2d 668 (1999).

The State contends that appellant cannot raise this argument on appeal because it was not made below. However, Lewis

objected at the pretrial hearing to the prosecution's solicitation of testimony regarding "prejudicial behavior . . . that they cannot even remotely tie to my client to inflame or prejudice the jury." We deem this objection sufficient to raise both the issue of relevancy as defined by Ark. R. Evid. 401 and of the balancing test of Rule 403. Thus, we find that Lewis has preserved her arguments for appeal. The testimony about which Lewis complains was offered by the State as proof of terroristic threatening in the second degree. Arkansas Code Annotated § 5-13-301(b)(1)(Repl. 1997) provides that, "A person commits the offense of terroristic threatening in the second degree if, with the purpose of terrorizing another person, he threatens to cause physical injury or property damage to another person." Thus, the conduct prohibited by this section is the communication of a threat with the purpose of terrorizing another. It is not necessary that the recipient of the threat actually be terrorized. *Smith v. State*, 296 Ark. 451, 757 S.W.2d 554 (1988). The witness's state of mind is simply not an element of the offense of terroristic threatening because it is not necessary that the recipient of the threat actually be terrorized. *Id.*

■ We agree that the trial court erred in admitting evidence of the prior act for two reasons. First, there is absolutely no evidence from which the jury could conclude that Lewis, who was not present during the earlier pit-bull attack, knew about the incident, much less that these two officers were involved. The prior "bad act" occurred at the same house but had no demonstrative connection to Lewis. Second, although the State contends that this evidence was relevant to show the officers' state of mind, this is simply not an element of the offense. *See Smith, supra.*

■ ■ However, where the evidence of guilt is overwhelming and the error is slight, the appellate court can declare the error harmless and affirm. *Greene v. State*, 317 Ark. 350, 878 S.W.2d 384 (1994). Here, both officers testified with great detail about Lewis's words and acts during the incident in question. Threatening to loose two snarling pit-bull dogs "on" a person is hardly an ambiguous act. Moreover, Lewis's son, Arquis, testified on behalf of the defense. Arquis testified on both direct and cross-examination that his mother specifically told him to "turn the dogs loose" on the officers and that he did walk to the pen after she directed him to open it. The evidence of guilt is overwhelming and, under such circumstances, the trial court's error was harmless.

Affirmed.

ROBBINS, J., agrees.

BIRD, J., concurs.

SAM BIRD, Judge, concurring. I agree with the majority in affirming the conviction for terroristic threatening, stemming from Lewis's ordering her son to release pit bulls upon the police officers. I write separately, however, because I do not agree that the trial court erred in admitting the officers' testimony that they witnessed the previous attack by pit bulls at the residence where Lewis engaged in the behavior that led to the conviction.

It is not necessary that the State prove that the victims of second-degree terroristic threatening actually were terrorized, and the state of mind of the recipient of the threat is not an element of the offense. *Smith v. State*, 296 Ark. 451, 757 S.W.2d 554 (1988). The majority incorrectly expands the holding of *Smith*, in my view, to defeat the State's contention that the evidence at issue was admissible as relevant to the victims' state of mind.

In order to prove the elements of terroristic threatening, the State was required to prove that Lewis's purpose in telling her son to release the pit bulls upon the police officers was to terrorize them. *See* Ark. Code Ann. § 5-13-301(b)(1) (Repl. 1997). This court discussed the elements of terroristic threatening in *Knight v. State*, 25 Ark. App. 353, 758 S.W.2d 12 (1988), where we stated:

> We agree with the State that the gravamen of the offense of terroristic threatening is communication, not utterance. The statute does not require that the threat be communicated by the accused directly to the person threatened. There is no requirement that the terrorizing continue over a prolonged period of time. Nor does the statute require that it be shown that the accused has the immediate ability to carry out the threats. (1979). We do agree, however, with the statement of the court in *State v. Morgan*, 128 Ariz. 362, 625 P.2d 951 (1981), that to be found guilty of threatening the defendant must intend to fill the victim with intense fright. Under our statute it is an element of the offense that the defendant act with the purpose of terrorizing another person, i.e., it must be his "conscious object" to cause fright.

25 Ark. App. at 356-57, 758 S.W.2d at 14 (some citations omitted). In *Knight*, a deputy sheriff listening by intercom to an inmates' jail cell overheard the defendant say that some deputies would not die of natural causes because he would be out of the "pen" someday.

The *Knight* court considered as part of the sufficiency of the evidence the deputy's testimony that he "felt terrorized," and we noted the State's proof that he was, in fact, "put in fear."[1]

The fear of the victim has also been considered as part of the sufficiency of the evidence for kidnapping, although it is not an element of that crime. *See Hickey v. State*, 14 Ark. App. 50, 684 S.W.2d 830 (1985). In *Brooks v. State*, 308 Ark. 660, 827 S.W.2d 119 (1992), the supreme court referred to the victim's fear although it is not an element of kidnapping, aggravated robbery, and rape, for which the appellant was convicted. The *Brooks* court wrote the following in addressing the argument that a knife found in the car where the attack occurred could not be tied directly to the attack and that its admission unduly prejudiced the jury:

> The knife was found in the car, which was the site of the crime, and the victim was cut by a knife. The instrumentality used to inflict fear is patently relevant to the crimes for which the appellant is charged, all of which include an element of force for perpetration. Whether this was the actual knife used was a matter for the jury to decide, but it was relevant to corroborate the testimony of the victim concerning the stabbings.

308 Ark. at 669, 827 S.W.2d at 124.

Purpose and intent are frequently not subject to proof by direct evidence and may be inferred from the facts and circumstances of the case. *Edwards v. State*, 40 Ark. App. 114, 842 S.W.2d 459 (1992); *see Russey v. State*, 322 Ark. 786, 912 S.W.2d 420 (1995). Here, the State was required to prove that Lewis's purpose was to terrorize the officers, and it introduced proof that the instrumentality she intended to employ was the pit bulls. I would view the officers' testimony that they had witnessed a previous attack by a pit bull at the same residence where Lewis ordered pit bulls to be released upon them as relevant proof that the officers were fearful of her order, and as circumstantial, relevant proof that her purpose in ordering their release upon the officers was to terrorize them.

For the reasons stated, I concur.

---

[1] Knight's conviction was reversed because we did not think that the evidence was sufficient to establish that the appellant, even if aware that he might be overheard, had made the statement with the conscious object of terrorizing the deputy.