Cite as 2025 Ark. App. 364

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CR-24-543

| | | |
|---|---|---|
| CESAIRE RICE | | **Opinion Delivered** June 4, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTH DIVISION |
| V. | | [NO. 60CR-21-992] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE KAREN D. WHATLEY, JUDGE |
| | | AFFIRMED |

## BRANDON J. HARRISON, Judge

A Pulaski County jury convicted Cesaire Rice of committing a terroristic act causing serious injury or death in violation of Ark. Code Ann. § 5-13-310(a)(1) (Repl. 2024) and manslaughter, Ark. Code Ann. § 5-10-104(a)(3) (Repl. 2024), with a firearm enhancement for both. It acquitted him of second-degree murder. Rice filed a timely motion under Ark. R. Crim. P. 33.3(c) seeking to vacate his conviction for terroristic act because, he argues, the jury's finding that he committed a terroristic act by "[s]hooting at . . . a conveyance which is being operated or which is occupied by another person *with the purpose to cause injury to another person*" (emphasis added) is inconsistent with its finding that he committed manslaughter by "recklessly caus[ing] the death of" the victim, Jacob Robinson.

Rice concedes there is no constitutional double-jeopardy violation. And he should. It is settled that any inconsistent finding the acquittal of second-degree murder might imply

would get him nowhere. *United States v. Powell*, 469 U.S. 57 (1984); *Mercouri v. State*, 2016 Ark. 37, 480 S.W.3d 864.

Rice points instead to a statute that prohibits inconsistent verdicts of *conviction* (not acquittal):

> (a) When the same conduct of a defendant may establish the commission of more than one (1) offense, the defendant may be prosecuted for each such offense. However, the defendant may not be convicted of more than one (1) offense if:
>
> . . . .
>
> (3) Inconsistent findings of fact are required to establish the commission of the offenses.

Ark. Code Ann. § 5-1-110(a)(3) (Repl. 2024). The circuit court ruled that, "[w]hile the jury found the defendant's actions recklessly caused the death of Jacob Robinson, the evidence presented at trial supports a finding that the defendant shot at the defendant's vehicle with the purpose to cause physical injury." The offenses thus "ha[d] different elements the State had to prove."

Rice appealed. On appeal, the State accepts his premise that section 5-1-110(a)(3) could apply on the facts. But it argues the convictions did not require inconsistent findings because by statute, "[w]hen acting recklessly suffices to establish an element, [as with manslaughter,] the element is also established if a person acts purposely or knowingly." Ark. Code Ann. § 5-2-203(c)(2) (Repl. 2024). That is, in a prosecution for an offense that requires reckless conduct, the State could fail to convict by undershooting the mens rea element, but could not overshoot it by proving knowing or purposeful conduct instead. So it contends the conviction of reckless manslaughter is not necessarily inconsistent with a

finding that purposeful conduct caused Robinson's death. *See Cole v. State*, 33 Ark. App. 98, 103, 802 S.W.2d 472, 476 (1991) ("[S]ince the evidence in this case was sufficient to warrant a conviction of the greater offense on both counts, appellant is in no position to complain of the jury's having extended him greater leniency than he was entitled to.").

This issue appears to be one of first impression in Arkansas.[1] We conclude it is unnecessary, if not advisory, to decide how section 5-1-110(a)(3) applies to these convictions. They appear to rest on legally distinct conduct (that is, multiple gunshots), not "the same conduct," so a premise in subsection (a) for applying any of its subparts is missing. But if we're wrong about that, we would hold that the convictions did not require "inconsistent findings of fact" under subdivision (a)(3), either.

## I.

The evening of 14 January 2021, Rice and his lifelong friends Charles McCollum, Anthony Williams, and Jerrice Stout left Williams's apartment on University Avenue in Little Rock for Stout's uncle's apartment on John Barrow Road. They played video games there.

Late that afternoon, McCollum had called Rice and Stout in an excited state. He told them that "Jake Robinson and his crew" had just fired shots at his vehicle. Rice had been en route to McCollum's apartment when he got the call; when Rice arrived, McCollum showed him bullet holes in his car. Rice had been aware of Robinson, who

---

[1] In *Finley v. State*, 2019 Ark. 336, 587 S.W.3d 223, our supreme court addressed a challenge to the factual inconsistency of jury verdicts that, as in this case, was first presented in a posttrial motion after the sentencing order was entered. We follow *Finley* in addressing the merits of Rice's argument "[d]espite this procedural bar." *Id.* at 8, 587 S.W.3d at 228.

followed him on Instagram. Instagram posts show Robinson with a cigar in one hand and, in the other, what police called a "Draco"— functionally an AK-47 rifle but smaller in form to allow one-handed use. Face, sleeve, and neck tattoos made Robinson easy to recognize. And Rice was about to recognize him.

Stout needed to visit his girlfriend in Otter Creek. His tags were expired, and his gas tank was on "E." So he asked his friends to follow him to the MAPCO convenience store at the corner of Kanis Road and John Barrow Road, less than a minute's drive away. They took three separate vehicles. All of them were armed. It was after 11:00 p.m. Stout went into the store to get snacks, followed by Williams. Rice and McCollum had pulled up to a gas pump in the second row from the store and were still outside.

As Williams was entering the store, Robinson was leaving it. Surveillance video shows him get in the driver's seat of a white Toyota Camry parked at a pump in the row closer to the store, one pump removed from Rice and McCollum. Then the shooting began. Robinson was shooting from inside the car out; McCollum was shooting from outside the car in. Rice joined in, firing from behind a car across from Robinson's. Robinson's shots, at least, were penetrating the Camry's door.

A customer who was caught in the crossfire testified that McCollum shot first. He did not see Robinson until he got out of the vehicle. Robinson "was just kind of scared . . . he just got out, started firing back, and started running." Surveillance video shows him open the car door about eight seconds after the first shot is heard and run away from the store, out of the video frame, shooting as he goes. Rice and McCollum had left the frame

4

already; Rice ran east on Kanis and McCollum ran across it. Audible gunshots continued for six more seconds.

Rice was tried separately. He testified that he started shooting at Robinson because Robinson was shooting at him. Williams, who was firing his 9mm from near MAPCO's front door, said he heard shots, saw Robinson running, and started shooting because he thought Robinson was chasing down Rice and McCollum. McCollum did not testify.

Around 11:15 p.m., police responded to reports of shots fired. Little Rock Police Officer Walter Riddick found Robinson lying in a lane of travel on Kanis Road, about a block away from the MAPCO store, near a patch of blood in the grass. Police recovered five .40-caliber shell casings from Kanis Road nearby. Robinson died at Baptist Health Medical Center the same night.

Dr. Jennifer Forsyth, a forensic pathologist at the Arkansas State Crime Laboratory, testified that Robinson was hit three times in unknown order. A bullet of unknown caliber passed through his left wrist and was not recovered. She recovered two .40-caliber bullets from his body. One went through the flesh of Robinson's right thigh and lodged there. One entered his left hip region, hit the pelvic bone, and came up through his body cavity, passing through the big vessels that come off the aorta into the pelvic region. She recovered that bullet from his abdomen. All three wounds contributed to his death, she testified. But the bullet that entered near his left hip was "the most significant one with the most bleeding." Almost two liters of blood, "close to a third of [Robinson's] entire blood volume [wa]s in his abdominal cavity." The cause of death was "multiple gunshot wounds."

5

Including those recovered from Kanis Road, officers found sixty-one shell casings of four different calibers at the scene. They included Robinson's 7.62mm rifle casings; Williams's 9mm casings; .40-caliber casings from the rounds that at least Rice was firing; and 5.7mm casings that were not directly tied to anyone but, from their location, were probably McCollum's. Stout claimed he never left the store.

Steve Hargis, a firearms and toolmark examiner at the crime lab, testified that the two .40-caliber bullets recovered from Robinson's body were different: one had a brass full-metal jacket; one had a copper jacket. He could not confirm or rule out that they were fired from the same gun. No shell casings were submitted for his review.

The State had charged Rice with capital murder, terroristic act, and first-degree battery. But the circuit court granted a directed verdict on capital murder and first-degree murder at the close of the evidence. It found that even construing the evidence most favorably to the State, there was no substantial evidence that Rice acted with either a premeditated and deliberate purpose, or purposefully in causing Robinson's death.[2] The court instructed the jury on second-degree murder and the lesser-included offenses of manslaughter and negligent homicide, as well as terroristic act and the firearm enhancement. At the State's request, it gave Arkansas Model Jury Instruction–Criminal 401 on accomplice liability. An accompanying instruction charged the jury that "[w]hen two or more persons are criminally responsible for an offense, each person is liable only for the degree of the offense that is consistent with the person's own culpable mental state." AMI Crim. 2d 405.

---

[2]A detective from the major crimes unit of the Little Rock Police Department testified that he did not try to determine whether anyone involved in the shootout had a gang affiliation.

6

II.

As we noted already, Rice does not contend his convictions violate constitutional double jeopardy, only a subpart of section 5-1-110(a) that prohibits convictions for multiple offenses for "the same conduct of a defendant" if they require "[i]nconsistent findings of fact." Ark. Code Ann. § 5-1-110(a)(3). But double jeopardy is relevant in one sense: other subparts of subsection (a) codify double-jeopardy protections. *See id*. § 5-1-110(a)(1). And in double-jeopardy cases, our supreme court has decided that convictions based on different gunshots in one spree are not convictions for the "same conduct" under subsection (a). Those decisions imply it is unnecessary, if not advisory, to decide whether Rice's convictions require "[i]nconsistent findings of fact" under subdivision (a)(3) because they did not necessarily rest on the "same conduct" by Rice.

The legal principles are simple. The general rule in shooting cases is "one shot, one crime." (Or more than one crime.) Our supreme court held in *McLennan v. State* that double jeopardy did not prevent a defendant who fired three shots into an apartment from being convicted of three terroristic acts because each shot "required a separate conscious act or impulse in pulling the trigger and [was] accordingly punishable as a separate offense." 337 Ark. 83, 89–90, 987 S.W.2d 668, 672 (1999). The court followed *McLennan* on that point in *Lee v. State*, 2017 Ark. 337, 532 S.W.3d 43. It held it did not need to consider the elements of terroristic act, first-degree battery, and aggravated assault to reject a double-jeopardy challenge by a defendant who received a six-conviction medley of those offenses for firing six shots at a house. *Id*. "Where there is a single impulse, only one charge lies, but if there are separate impulses, separate charges lie even if all are part of a common stream

7

of action." *Id.* at 5, 532 S.W.3d at 51. Similarly, if a single bullet fired at a car strikes and kills the victim, double jeopardy would not prevent convictions for terroristic act and first-degree murder because the act of firing it could violate both statutes. *Starling v. Kelley*, 2021 Ark. 15, 615 S.W.3d 386. The possibility that the jury convicted Rice of one offense as an accomplice (which the verdict forms would not reflect) is also relevant in review for inconsistency. *Finley v. State*, 2019 Ark. 336, 587 S.W.3d 223; *see also* AMI Crim. 2d 405.

The controlling facts in the record, in our view, are also simple once fully digested. Robinson was hit by three bullets. The two recovered from his body were consistent with the .40-caliber rounds Rice testified he was firing. But the record does not disclose how many bullets, if any, hit Robinson while he was in the car—that is, the "conveyance that was being operated or that was occupied by another person" under Ark. Code Ann. § 5-13-310(a)(1). No blood is visible in the Camry's interior. State's exhibit 110 depicts a drop of blood just outside the car door. No injury is visible in the surveillance video; Robinson's gait is not obviously hindered as he runs away. Shooting continued for six more seconds. Virtually all blood depicted in the exhibits was pooled near where Robinson and the five .40-caliber casings were found in Kanis Road.[3] The jury might have concluded that Rice "cause[d] serious physical injury" to Robinson when he was in the car, Ark. Code Ann. § 5-13-310(b)(2), but fired the fatal shot after he got out. At that point, shooting him might be a homicide, but it would no longer meet the elements of a terroristic act. Under *Lee*, even that is farther than we need to go. Each shot that injured Robinson could ground a

---

[3]For that matter, the jury heard this might not have been Robinson's blood. Rice showed the jury scars to his left arm from what he testified were three gunshot wounds he suffered as he was running away from the shootout.

separate conviction, with no consistency in mens rea required, even if they all hit when he was inside the car.

III.

For the reasons set out above in Part II, we conclude from the record that these convictions are not for the "same conduct" under section 5-1-110(a), so the subpart the parties argue about would not apply in the first place. But if we are wrong, or if we have overstepped by failing to entertain the parties' assumption that subdivision (a)(3) might apply on this record, we would agree with the State that Rice's convictions did not require "[i]nconsistent findings of fact" in the sense it prohibits.

We could hope for no better example of the kind of inconsistent findings contemplated in subdivision (a)(3) than *People v. Delgado*, 450 P.3d 703 (Colo. 2019), which interprets an identical Colorado statute. In *Delgado*, the defendant knocked someone unconscious from behind and took his belongings. He was convicted of two offenses: theft from a person and robbery by a single taking. There was a problem—under Colorado law, "theft from a person is the unlawful taking of an item *without* force, and robbery is the unlawful taking of an item *with* force." *Id*. at 704. The convictions were inconsistent as could be because each conviction implicitly found beyond a reasonable doubt that the state had *not* proved the use-of-force element of the other offense: "When a defendant is convicted of crimes featuring elements that are mutually exclusive, the defendant hasn't been convicted of each crime beyond a reasonable doubt." *Id*. at 707. Our supreme court has adopted a similar test for "inconsistent" verdicts generally. *Meadows v. State*, 360 Ark.

9

5, 16, 199 S.W.3d 634, 641 (2004) ("This court has found 'inconsistent' verdicts to be those verdicts with some logical impossibility or improbability implicit in the jury's findings.").

There are no mutually exclusive or impossible findings here. The convictions differ only in the degree of culpable intent (mens rea) the jury found Rice's conduct exhibited. Though the jury was not instructed so, proof of purposeful conduct was, as a matter of law, sufficient to sustain a conviction for reckless manslaughter. Ark. Code Ann. § 5-2-203(c)(2). A similar provision says offenses that require proof that a person acted negligently are satisfied if a person acts purposefully, knowingly, or recklessly. *Id.* § 5-2-203(c)(1). If acting knowingly is an element, acting purposefully will also do. *Id.* § 5-2-203(c)(3). Further, courts recognize that a jury might acquit out of leniency instead of doubt about the defendant's guilt. *See Powell*, *supra*.

Can it benefit Rice that this jury's leniency stopped at manslaughter? No. Even if the manslaughter and terroristic-act convictions rest on the same conduct,[4] they would not be *mutually* inconsistent like those in *Delgado*. A finding that Rice committed manslaughter and caused Robinson's death by shooting recklessly at his car might look inconsistent with his terroristic-act conviction, because proof of reckless conduct would not demonstrate the "purpose to cause injury" the terroristic act offense requires. Ark. Code Ann. § 5-13-310(a)(1) & (b)(2). But because section 5-2-203(c)(2) broadens the mens rea for manslaughter to accommodate purposeful conduct too, a finding that Rice caused Robinson's death by purposefully shooting at his car to cause him injury *would* sustain his conviction for reckless manslaughter. Perhaps the General Assembly enacted section 5-2-

---

[4]Somehow. *See supra*, Part II.

10

203(c) and its subparts as a hedge against these inconsistency issues in multiple-offense prosecutions. Jury leniency is a recurring issue in those cases. *E.g.*, *Brown v. State*, 347 Ark. 308, 318, 65 S.W.3d 394, 400 (2001) (jury initially returned a verdict "imposing no punishment whatsoever" for defendant's Class B and D felony convictions for shooting at his wife's paramour and shooting and injuring her). Or perhaps it did not think that convictions that materially differ only in the mens rea, and not in the underlying conduct, would reflect "inconsistent findings of fact" under section 5-1-110(a)(3) in the first place. Rice's two convictions do not seem to rest on the "same conduct" under subsection (a) in any event, as we discussed in Part II. Here, all analytical roads run in one direction:

Affirmed.

TUCKER and BARRETT, JJ., agree.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.

11